

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRUSTEES OF THE LOCAL 734 )
BAKERY DRIVES HEALTH AND )
WELFARE PLAN, )
 )
        Plaintiff, )
 )
v. ) No. 07 C 2070
 )
LAMONT A. WOLFF and )
LORRAINE G. WOLFF, )
 )
        Defendants. )

## **OPINION AND ORDER**

Plaintiff Trustees of the Local 734 Bakery Drivers Health and Welfare Fund (the "Fund"), pursuant to § 502(a)(3) of the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), allege that defendants Lamont and Lorraine Wolff must reimburse the Fund for benefits the Fund paid for Lamont's medical care. Lamont was injured in an automobile accident and the Fund contends it is entitled to reimbursement out of a settlement resulting from a related state court lawsuit filed in Indiana. The Wolffs move to dismiss on the ground that the Fund's right to a lien was already adjudicated in the Indiana

case and therefore the Fund's present claim is barred based on res judicata.

Defendants filed a motion to dismiss and subsequently supplemented that motion with a statement of fact. The statement of fact cites to state court pleadings and orders, as well as some related correspondence. Plaintiff does not dispute that accurate copies of the state court documents are provided. Although no declaration or affidavit is provided authenticating the correspondence, plaintiff also does not dispute the authenticity of those documents. In response to the motion to dismiss, plaintiff provides four declarations. Plaintiff, however, does not provide a paragraph-by-paragraph response to defendants' statement of facts as would ordinarily be required when responding to a summary judgment motion. See N.D. Ill. Loc. R. 56.1. No formal order was entered converting the motion to dismiss to one for summary judgment. Without further notice to plaintiff and an opportunity to respond, defendants' motion cannot be converted to one for summary judgment. See Edward Gray Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 94 F.3d 363, 366-67 (7th Cir. 1996). Still, without converting the motion to one for summary judgment, judicial notice may be taken of the state court documents. See 4901 Corp. v. Town of Cicero, 220 F.3d 522, 527 n.4 (7th Cir. 2000); Mara Intern. Furniture, LLC v. Village of Hanover Park, 2006 WL 1543912 *1 (N.D. Ill. June 1, 2006); Lara-Unzueta v. Monica, 2004 WL 856570 *3 (N.D. Ill. April 20, 2004). Also, if the parties agree as to

additional facts that are consistent with, but outside the complaint, those facts may be considered on a motion to dismiss. Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997); Ruppel v. Ramseyer, 33 F. Supp. 2d 720, 728 (C.D. Ill. 1999); Jeanty v. Washington Mut. Bank F.A., 305 F. Supp. 2d 962, 964 (E.D. Wis. 2004). Moreover, even if the additional facts should not be considered absent formal conversion to a motion for summary judgment, any procedural error would be harmless if there is no evidence supporting a genuine factual dispute and plaintiff had an adequate opportunity to submit such additional evidence, either before judgment is entered or on a Rule 59(e) motion after judgment is entered. See Loeb Ind., Inc. v. Sumitomo Corp., 306 F.3d 469, 479-80 (7th Cir. 2002). Here, judicial notice will be taken of the state court pleadings and orders and other additional facts that plaintiff does not contend are disputed will be considered. As to the res judicata defense, the state court pleadings themselves are not in dispute. The only possible material factual disputes would relate to service of process and the relationship between plaintiff and a purported agent.

The facts taken as true for purposes of ruling on the motion to dismiss are as follows. The Wolffs are and have been residents of Indiana. In December 1998, Lamont was severely injured in an automobile accident that occurred in Indiana. Through his employment, Lamont had medical insurance from the Fund. In January 1999, both Lamont and Lorraine signed an

agreement promising to reimburse the Fund for related medical benefits paid by the Fund in the event monies were paid by a third party "by reason of any claim, demand, suit or settlement arising out of" the pertinent injury or illness. The Fund paid approximately $120,000 in medical benefits related to Lamont's injuries.

In May 1999, in the Superior Court of Lake County, Indiana, the Wolffs brought suit against Terry Thackston, the driver of the vehicle that collided with Lamont's vehicle (the "Liability Case").[1] The lawsuit sought compensatory and punitive damages, and included Lorraine's claim for loss of consortium.

In July 1999, Primax Recoveries, Incorporated (n/k/a ACS Recovery) sent the Wolffs' attorney a document entitled "Notice of Lien to Attorney" in which it represented that the Fund was its "client." The letter is addressed to the attorney at his office in Indiana. Presently, the Wolffs provide a "To Whom It May Concern" letter from the Administrator of the Fund stating that Primax "has authority to negotiate and resolve subrogative/reimbursement claims on our behalf." Although the letter is undated, it uses the name Primax so it predates the July 2006 name change to ACS (see Romano Decl. ¶ 2) and the November 2006 adjudication of lien motion. In the lien notice, ACS asserts a lien based on the Fund's right to subrogation. The lien notice does not expressly refer to the then-pending Indiana

---

[1] Other defendants were also named, but all of them were either dismissed before trial or found not liable at trial.

litigation, but does mention that ACS had been notified that the attorney represented Lamont Wolff. In August 2000, the Wolffs' insurer paid the Wolffs the $75,000 limit under their underinsured motorist clause, less a setoff for medical expenses previously paid. A few days later, the Wolffs paid Primax $12,500 which they described in a cover letter as "partial satisfaction" of the Fund's medical benefits lien.

In July 2003, following a jury trial in the Liability Case, a verdict was returned in the Wolffs' favor awarding Lamont $981,873 in compensatory damages, Lorraine $500,000 in compensatory damages, and the two of them were jointly awarded $20,000 in punitive damages. Following the verdict, an insurer of Thackston (Integon Insurance Company) deposited $25,000 with the Lake County Superior Court, which represented the limits of its policy.

Thackston subsequently assigned to the Wolffs his rights under the Integon policy. Based on the assignment of rights, the Wolffs brought suit in the Circuit Court of Lake County, Indiana (the "Insurance Case") alleging that Integon and the other defendants improperly delayed paying the limits of the policy thereby forcing Thackston to defend himself in the Liability Case. Named as defendants in the Insurance Case were Integon, two related insurance companies, and Integon's insurance adjuster. The insurance defendants allegedly breached their duties of good faith and fair dealing. In accordance with Indiana court rules, the Insurance Case was transferred to the

Superior Court where the Liability Case had been tried. The Insurance Case was assigned a different case number than the Liability Case. In October 2006, the Insurance Case was settled for $625,000, which the Wolffs contend represents one-third of the amount claimed.[2]

In November 2006, the Wolffs filed a "motion to adjudicate lien" in the Insurance Case. The motion states that the Fund paid some of Lamont's medical bills and then refers to a lien of ACS. There is no express allegation regarding the relationship between ACS and the Fund. The accompanying memorandum also fails to explain the relationship between ACS and the Fund, but makes clear that any lien claimed by ACS is based on the Fund's claim for reimbursement of medical benefits it paid on Lamont's behalf. The requested relief, however, expressly refers only to a lien of ACS. In the state court memorandum, the Wolffs argue that ACS would not be entitled to any portion of the $625,000 recovery because, other than the $25,000 limit of the policy, that recovery was based on bad faith conduct on the part of the insurer, not indemnity for the Wolffs' successful claim against Thackston. Alternatively, the Wolffs argued that the lien should be limited to one-third of the medical benefits less a proportionate share of attorney fees and expenses in accordance with Ind. Code § 34-51-2-19 or based on the common law of ERISA

---

[2]If based on the verdict in the Liability Case, that would represent approximately one-third of the total damages awarded plus expenses and interest.

as set forth in Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells, 213 F.3d 398 (7th Cir. 2000).

On November 1, 2006, by certified mail, the Wolffs sent ACS a notice of the motion along with the accompanying memorandum. The notice also informed ACS that there would be a hearing on the motion on January 12, 2007. The notice was addressed to an in-house counsel of ACS at ACS's offices. The certified mail receipt shows that ACS received the notice on November 6, 2006. The Fund does not dispute that ACS received notice of the motion. The Wolffs do not dispute that (a) no separate notice was sent to the Fund; (b) no motion was filed to make ACS or the Fund a party to the Insurance Case; and (c) no summons was served on ACS or the Fund.

Under the terms of the settlement, a stipulation of dismissal was to be filed following the payment of the settlement amount. The settlement agreement did not have a provision that the parties would request that the court retain jurisdiction to enforce the settlement agreement. On November 8, 2006, a stipulation of dismissal was submitted to the court.[3] On November 17, 2006, a docket entry was made in the Insurance Case stating: "Final Order entered. Order dated 11-15-06. Court grants Order of Dismissal with prejudice. RJo."[4] However, a

---

[3] No copy of the stipulation is provided.

[4] "RJO" means the order was entered into the Record of Judgment and Orders. See Smith v. Deem, 834 N.E.2d 1100 (Ind. Ct. App. 2005).

later entry the same day states in its entirety: "Dismissed without Prejudice."

On January 12, 2007, the Superior Court ruled on the motion to adjudicate the lien. The order notes that ACS was served but did not appear and also notes that the court reviewed the Wolffs' motion, memorandum, and the cited authority. It is a ruling based on the merits, not one merely based on ACS's failure to appear. The court found "ACS Recovery was fully compensated when it received $12,500.00 as repayment for medical expenses paid on Lamont Wolff's behalf and the lien against plaintiffs is resolved. ACS Recovery is not entitled to further reimbursement from the plaintiffs." The docket entry states: "Pltf appears by Attys Kelly and Brown and deft fails to appear for hrg on mnt to adjudicate medical lien. Hrg held. Order filed OPF RJO."[5]

The Fund provides the declaration of ACS's general counsel conclusorily stating that ACS's principal place of business is in Illinois and that it does not maintain an office in Indiana nor transact business there. ACS also does not have a license to conduct business in Indiana. It is further stated that ACS has never been appointed an agent of the Fund for purposes of receiving service of process on behalf of the Fund. There is no dispute that ACS has authority to act on the Fund's behalf in order to negotiate and resolve subrogation disputes.

---

[5]"OPF" means "order per form." See Woodley v. Fields, 819 N.E.2d 123, 129 n.12 (Ind. Ct. App. 2004), vacated sub nom., Allstate Ins. Co. v. Fields, 842 N.E.2d 804 (Ind. 2006).

Since defendants base their res judicata defense on an Indiana state court proceeding, Indiana preclusion law applies. 28 U.S.C. § 1738; Richmond v. St. Joseph Care Center West, 190 F.3d 500, 501 (7th Cir. 1999). "Claim preclusion applies when the following four factors are present: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merits; (3) the matter now at issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between parties to the present suit or their privies." Perry v. Gulf Stream Coach, Inc., 871 N.E.2d 1038, 1048 (Ind. Ct. App. 2007) (quoting Dawson v. Estate of Ott, 796 N.E.2d 1190, 1195 (Ind. Ct. App. 2003)). The Fund contends that the first, second, and fourth factors are not satisfied. It contends the Indiana court lacked jurisdiction to act on the motion to adjudicate a lien because it had previously entered a final order of dismissal without reserving jurisdiction to consider further motions. It further contends that any order could not apply to ACS or the Fund because no order was entered making either a party to the Insurance Case, no summons was served on either of them, and personal jurisdiction over ACS would not be proper in Indiana. The Fund also contends that it, not ACS, had the right to subrogation so an order adjudicating ACS's lien rights did not affect the Fund. The Fund also disputes that ACS is its privy because it never authorized ACS to receive service of summons on

ACS's behalf. Additionally, the Fund contends identity of the actions is not satisfied.

The Fund's contentions regarding personal jurisdiction are without merit. The Wolffs moved to resolve a lien on settlement proceeds they possessed; they did not seek to impose any liability on ACS or the Fund nor to attach any property already held by ACS or the Fund. Thus, their motion to adjudicate the lien was an in rem proceeding and it concerned a res (the settlement proceeds) that was held by the Wolffs. Since the Wolffs were Indiana residents both at the time of the settlement and when the lien was being adjudicated, the res they held is considered to be located in Indiana, making it proper for the adjudication to take place at a court in Indiana. See Zilinger v. Allied Am. Ins. Co., 957 F. Supp. 148, 149-50 (N.D. Ill. 1997) (settlement funds were a res located in Illinois since held by Illinois residents and therefore it was proper to resolve liens on the fund in an in rem proceeding in an Illinois state court). Cf. Peresipka v. Elgin, J. & E. Ry., 231 F.2d 268, 274 (7th Cir. 1956) (quoting McCallum v. Baltimore & O. R., 379 Ill. 60, 39 N.E.2d 340, 344 (1942)) (liens on res consisting of funds of settlement in the case that had been deposited with the court were properly litigated in an in rem proceeding in the court where the funds were deposited). Because the lien adjudication was an in rem proceeding, personal jurisdiction over ACS was not required. Zilinger, 957 F. Supp. at 149-50.

Due process,[6] however, still requires that all those known to have or claim an interest in a res be provided "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795 (1983) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). As to the Wolffs' lien adjudication, notice to a known claimant delivered by certified mail more than two months before the hearing date for a motion would be sufficient to satisfy due process concerns. See Adams, 462 U.S. at 799-800. See also Charles Alan Wright & Arthur R. Miller, Federal Prac. & Proc.: Civil 3d § 1074 at 359-60 (2002). Service of a summons or formal designation as a party is not constitutionally required, but Indiana statutes or procedural rules may require more than due process minimums. Cf. Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 453 (2004) (due process did not require service of summons or establishment of in personam jurisdiction in order to pursue in rem proceeding in bankruptcy case; it was the Bankruptcy Rules that required an adversary proceeding and service of a summons).

In Indiana, no statute or procedural rule expressly establishes the procedures to follow when adjudicating a lien.

---

[6]The jurisdiction of Indiana courts is extended to the limits permitted by the due process clause of the federal Constitution. Ind. Tr. R. 4.4(A) (last sentence); LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 967 (Ind. 2006).

See Principal Life Ins. Co. v. Needler, 816 N.E.2d 499, 503 (Ind. Ct. App. 2004). Liens related to judgments or settlements may be adjudicated in a separate declaratory judgment proceeding or, as was done in the Insurance Case, by a motion ancillary to the underlying proceeding. See id. at 504. See, e.g., In re Guardianship of Wade, 711 N.E.2d 851, 853 (Ind. Ct. App. 1999). When bringing a motion in a case, notice need not be provided by service of a summons; mailed notice will suffice. See Ind. Tr. R. 5(A)(3), 5(B)(2). The Fund contends that Indiana Trial Rules 4 (service generally) and 4.6 (service on organization) required that ACS be served with a summons and in a particular manner. Rule 4, however, sets forth service of process requirements for obtaining "jurisdiction over a party or person." As was previously discussed, the Wolffs' lien adjudication motion was an in rem proceeding that did not require that there be personal jurisdiction over ACS or the Fund.[7] Therefore, Rule 4's

---

[7] The situation in the Insurance Case is distinguishable from Bowmar Instrument Corp. v. Maag, 442 N.E.2d 729, 730-31 (Ind. Ct. App. 1982), which is cited by the Fund. In that case, the wife in a divorce proceeding obtained a wage assignment requiring her ex-husband's employer to pay child support obligations out of his wages. Unlike the in rem proceeding in the Insurance Case which sought no payment or other affirmative relief from the Fund, the employer in Bowmar was being required to make payments. It was held that the employer could not be held in contempt for failing to make the payments absent being served with process and joined as a party. See also Ind. Tr. R. 69(E)(4) (requiring that summons be served on garnishee). Another case cited by the Fund, Fox v. Galvin, 381 N.E.2d 103, 108-09 (Ind. Ct. App. 1978), is also distinguishable. That case was an independent action to enforce a mechanic's lien in which the owners of the real property who allegedly owed the debt were not joined as parties or served with process.

summons requirement was inapplicable to the Wolffs' lien adjudication motion.[8] Such a holding is also consistent with the preference in Indiana law to resolve cases on their merits and the disfavoring of setting up procedural obstacles for the unwary, such as unclear requirements that summons be served in particular situations. See Lindsey v. De Groot Dairy LLC, 867 N.E.2d 602 (Ind. Ct. App.), transfer denied, 878 N.E.2d 212 (Ind. 2007). Indiana law does not require that a motion to adjudicate a lien on settlement proceeds be initiated by service of a summons.[9]

---

[8]Trial Rule 4(B) refers to requirements when filing "the complaint or equivalent pleading." Trial Rule 3 amplifies the meaning of "equivalent pleading" by setting forth that a civil action is commenced by the filing of "a complaint or such equivalent pleading or document as may be specified by statute." Thus, "equivalent pleading" has been construed as referring to other statutorily specified means for commencing a civil action, such as commencing a dissolution of marriage proceeding by filing a petition. See Taylor v. Lewis, 577 N.E.2d 986, 990 (Ind. Ct. App. 1991), abrogated on other grounds as recognized in, Oxley v. Lenn, 819 N.E.2d 851, 856 (Ind. App. 2004). See also Wachstetter v. County Properties, LLC, 832 N.E.2d 574, 580 (Ind. Ct. App. 2005) (motion to intervene is not an "equivalent pleading"); United States v. Supervised Estate of Breidenbaugh, 794 N.E.2d 547, 554 (Ind. Ct. App. 2003) (claim against estate filed in probate proceeding is an "equivalent pleading"); State ex rel. Young v. Noble Circuit Court, 332 N.E.2d 99, 102 (Ind. 1975) (petition for an election recount is an "equivalent pleading"). A lien adjudication motion is not specified by a statute as being a type of civil action nor should it otherwise be considered an "equivalent pleading" to a complaint.

[9]Even if service of a summons were required, Indiana Trial Rule 4.14(F) provides: "No summons or the service thereof shall . . . be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." The notice mailed by

The Fund contends the Superior Court lacked jurisdiction to adjudicate the lien because the Insurance Case had been dismissed before the order was entered.[10] Citing Indiana Trial Rule 59(C), the Fund contends that the Superior Court lost jurisdiction 30 days after the case was dismissed with prejudice. That Rule, however, concerns correcting errors in a judgment. The Wolffs were not attempting to correct any error in the judgment nor otherwise seeking to modify the judgment. The Fund cites no law supporting that, subsequent to the entry of judgment, Indiana courts lack jurisdiction to consider ancillary proceedings. To the contrary, Indiana Trial Rule 69 expressly provides for post-judgment proceedings to enforce judgments, including supplemental proceedings to collect judgments against third parties, see Ind. Tr. R. 69(E). It is also well-established that Indiana courts have the inherent authority to

---

the Wolffs was reasonably calculated to provide such information and it actually did provide such information since all the items were contained in the notice and the notice was received by ACS. Arguably, even if the service of process were required under Indiana law, the notice that was sent was sufficient. See Reed Sign Serv., Inc. v. Reid, 755 N.E.2d 690, 695-97 (Ind. Ct. App. 2001).

[10]The Fund may also be disputing whether a judgment was entered. A judgment includes "any order from which an appeal lies." Ind. Tr. R. 54(A). As was set forth above, the ruling on the motion to adjudicate was entered on the docket. It is an appealable order. See, e.g., Wade, 711 N.E.2d at 853. Therefore, it constitutes a judgment. Rulings in supplemental proceedings that resolve a contested claim or right may be accorded a res judicata effect. See Kirk v. Monroe County Tire, 585 N.E.2d 1366, 1369 (Ind. Ct. App. 1992); Baker v. State ex rel. Mills, 9 N.E. 711, 717 (Ind. 1887); 17 Indiana Law Encyclopedia: Judgment § 170 at 416 (2003).

enforce the judgments they enter and to ensure that the judgments have been carried out and satisfied. Robinson v. Robinson, 858 N.E.2d 203, 206 (Ind. Ct. App. 2006); Grubnich v. Renner, 746 N.E.2d 111, 115 & n.3 (Ind. Ct. App. 2001); Kaghann's Korner, Inc. v. Brown & Sons Fuel Co., 706 N.E.2d 556, 564 (Ind. Ct. App. 1999). However, here the judgment was for dismissal of the case and that judgment did not incorporate the terms of the settlement or otherwise purport to retain jurisdiction for any other purpose. The subsequent adjudication of the lien related to the settlement; it did not seek to enforce the judgment of dismissal itself. An Indiana court also has the inherent authority to enforce the settlement of litigation that was before that court. E & S Mems, L.L.C. v. Eagen, 795 N.E.2d 508, 510 (Ind. Ct. App. 2003) (quoting Germania v. Thermasol, Ltd., 569 N.E.2d 730, 732 (Ind. Ct. App. 1991)). However, unless the dismissal provides that the court is retaining jurisdiction to enforce the settlement, the court loses such authority upon the entry of a judgment of dismissal. E & S, 795 N.E.2d at 510-11. Here, the Superior Court lacked jurisdiction to rule on the motion to adjudicate the lien because the case had already been dismissed without retaining jurisdiction to enforce the settlement or for some other purpose.[11]

---

[11] In order for the Superior Court to have had jurisdiction, the Wolffs would have first been required to move to have the dismissal vacated under either Trial Rule 60(B) (if the dismissal was with prejudice) or under Trial Rule 41(F) (if it was without prejudice). See E & S, 795 N.E.2d at 510-11.

Since the Superior Court lacked jurisdiction to adjudicate the lien, its ruling cannot be accorded a preclusive effect. The Wolffs' motion to dismiss will be denied.

Any discovery must be completed by March 31, 2008. A status hearing will be held on April 2, 2008 at 11:00 a.m.

IT IS THEREFORE ORDERED that defendants' motion to dismiss [11] is denied. Within two weeks, defendants shall answer the complaint. All discovery is to be completed by March 31, 2008. A status hearing will be held on April 2, 2008 at 11:00 a.m.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: JANUARY 31, 2008